UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Harmony J.,                                                                    Civ. No. 22-228 (WMW/BRT)

        Plaintiff,

v.

                                                                       **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

---

Clifford M. Farrell, Esq., Manring & Farrell, counsel for Plaintiff.

Andrew M. Luger, Esq., and Kizuwanda Curtis, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross–motions for summary judgment, filed in accordance with D. Minn. LR 7.2(c)(1). (*See* Doc. No. 17, Pl.'s Mot. for Summ. J.; Doc. No. 18, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem."); Doc. No. 19, Def.'s Mot. for Summ. J.; Doc. No. 20, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons set forth below, this Court concludes the decision of

the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record. Therefore, this Court recommends Plaintiff's motion be denied, and Defendant's motion be granted.

## BACKGROUND

Plaintiff was born in 1977 and is currently 45 years old. (Tr. 1845.)[1] She earned an associate's degree in 2000 and last worked as an x-ray technician in 2009, which is classified as a skilled job with light exertion level. (Tr. 25, 102, 104, 108, 130, 199–200, 466.)

Plaintiff asserts she is not able to work because of epilepsy, pain from rheumatoid arthritis, neck and back pain, and other health conditions.[2] (Tr. 66, 76, 108, 139, 1851, 1864.) In July 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of June 30, 2009. (Tr. 10.) After the Social Security Administration ("SSA") denied Plaintiff's claims initially, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 9, 2018. (Tr. 58.) At this hearing, Plaintiff amended her disability onset date to September 28, 2012, due to an unfavorable decision issued by the ALJ on September 27, 2012.[3] (Tr. 10, 61, 1794.) On December 12, 2018, the ALJ issued a

---

[1]     Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 14.)

[2]     Plaintiff experienced seizures and was diagnosed with epilepsy in 2007. (Tr. 107, 470, 657–58.)

[3]     Plaintiff filed an earlier application for Title II Disability Benefits on July 28, 2010, and Title XVI Disability Benefits on June 28, 2011. (Tr. 98.)

2

decision following the sequential five-step evaluation process[4] and determined Plaintiff was not disabled as defined in the Social Security Act. (Tr. 10–27.) On July 15, 2019, the ALJ's decision became final when Plaintiff's appeal was denied by the Appeals Council. (Tr. 1900–02.)

Plaintiff initiated judicial review with this Court on August 29, 2019. (*See* Tr. 1908–09.) On August 4, 2020, the United States District Court for the District of Minnesota partially granted Plaintiff's motion for summary judgement and remanded to the Commissioner with specific instructions to "consider the opinion of Plaintiff's therapist[5] . . . and provide an explanation for the weight given to [her] opinions" before "reconsider[ing] the RFC determination and conclusions at steps four and five." (Tr. 1914–33.)

In the meantime, after the ALJ's decision in 2018, Plaintiff underwent additional, extensive medical treatment for her back pain, including the following. Plaintiff

---

[4] At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of his past work. And at step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

[5] Hilary Winkelmann, APRN, CNP was Plaintiff's therapist. On remand, the ALJ considered Winkelmann's 2018 letter (Tr. 1409), and "accorded [the letter] little weight" because it was not consistent with the treatment record. (Tr. 1821.) This finding is not at issue on the present appeal.

underwent decompression and fusion surgery in March 2019. (Tr. 1809, 2346, 2372.) She had Botox treatments in June 2019, September 2019, December 2019, March 2020, June 2020, and September 2020, and steroid injections for pain management. (Tr. 1810–12, 2811, 2821, 2915, 2929, 2952, 2962, 2965, 2984, 2986, 3024, 3035, 3056.) In November 2019, Plaintiff underwent surgery to implant a spinal cord stimulator. (Tr. 1810, 2846, 2959–60.) In December 2020, Plaintiff underwent surgery to implant an intrathecal catheter and pain pump. (Tr. 1813, 3412–14.) And in January 2021, Plaintiff underwent a cervical fusion surgery and was hospitalized after the surgery. (Tr. 1803, 1814, 3312.)

On remand, the ALJ conducted a hearing on January 27, 2021, via telephone due to the COVID-19 pandemic.[6] (Tr. 1843–72.) The ALJ considered Plaintiff's additional medical records[7] and found Plaintiff had a residual functional capacity to perform sedentary work with limitations. (Tr. 1802–22.) The ALJ again evaluated Plaintiff's claim following the five-step process, and issued a decision on March 2, 2021, finding Plaintiff was not disabled. (Tr. 1824.) Relevant here on appeal, in making the RFC finding, the ALJ assigned little to no weight to two medical professionals' opinions – Mr. Jacob Guth, PA-C and Ms. Kristen Sundar-Bleninger, NP. (Tr. 1820–22.) Plaintiff requested consideration of the second ALJ decision by the Appeals Council, which was

---

[6] Plaintiff reiterated her amended disability onset date of September 28, 2012, at the ALJ hearing in 2021. (Tr. 1850.)

[7] Additional exhibits were added to the record, such as progress notes from multiple providers, records of pain management treatments, records of additional surgeries, and opinions from Jacob Guth PA-C and Kristen Sundar-Bleninger, NP. (Tr. 2190–3414.)

4

denied. (Tr. 1787–89.) Plaintiff then initiated review with this Court on January 27, 2022. (Doc. No. 1.) The parties' cross-motions for summary judgement are now before this Court for consideration. (Pl.'s Mem.; Def's Mem.)

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal). Thus, the Court's review of the Commissioner's final administrative decision "is limited and is deferential" to the Commissioner. *Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996).

## II.     Analysis of the ALJ's Decision

Following the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a), and considering the entire administrative record, the ALJ issued her decision denying Plaintiff's claim for benefits on March 2, 2021, finding Plaintiff not disabled within the meaning of the Social Security Act. (Tr. 1794–1824.) Plaintiff does not challenge steps

one through three of the ALJ's findings.[8] Plaintiff does challenge the ALJ's residual functional capacity ("RFC") determination and her resulting conclusions at steps four and five, which were based on the ALJ's RFC finding.

A person's RFC is the most she can do despite the combined effects of all her limitations. 20 C.F.R. § 416.945(a), (e). (Tr. 1822.) The ALJ found that Plaintiff –

> has a residual functional capacity to perform a range of work at a "sedentary" level of exertion, as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), lifting up to 10 pounds occasionally and less than 10 pounds frequently and standing/walking 2 hours and sitting for up to 6 hours in an 8 hour day, subject to all of the following additional limitations: occasionally crouch, kneel, stoop, balance, and climb ramps or stairs; never crawl; never climb ladders, ropes, or scaffolds; occasional overhead reaching bilaterally; frequent reaching, handling, and fingering in all other directions; no exposure to potential hazards such as moving machinery or unprotected heights; is able to perform simple, routine tasks involving only simple work-related decisions and routine workplaces changes; no fast-paced production requirements, defined as work requiring hourly or more frequent production quotas; and with occasional interaction with coworkers and the public.

(Tr. 1802.) After formulating Plaintiff's RFC, the ALJ found Plaintiff could not return to past work as an x-ray technician. (Tr. 1822.) However, at step five, the ALJ found

---

[8] At step two, the ALJ found Plaintiff to have the following severe impairments since the amended alleged disability onset date:

> degenerative disc disease of the cervical and lumbar spine status post spinal fusion surgeries; epilepsy; rheumatoid arthritis; chronic pain syndrome; osteopenia with history of thoracic spine fracture; anxiety disorder; and depressive disorder[.]

(Tr. 1797.)

7

Plaintiff could perform a significant number of jobs within the national economy[9] and therefore concluded Plaintiff was not disabled under the Act. (Tr. 1822–24.)

On appeal, Plaintiff argues the ALJ failed to comply with 20 C.F.R. § 404.1527(c) when evaluating the opinions provided by Mr. Jacob Guth, PA-C and Ms. Kristen Sundar-Bleninger, NP. (Pl.'s Mem. 16–23.) Plaintiff asserts the little to no weight given to these two opinions by the ALJ resulted in an RFC determination that exceeds Plaintiff's ability and therefore requests the Court reverse and remand the ALJ's decision.

### A. The ALJ's Consideration of Physician Assistant Guth's Opinions

Plaintiff argues that the ALJ erred in assigning little to no weight to the 2018 and 2020 opinions from Jacob Guth, a physician assistant who treated Plaintiff from 2009 to 2020. (Pl.'s Mem. 15–21; *see also* Tr. 1032–34, 2941–46 (Guth's opinions).) In a June 13, 2018 medical source statement, Guth noted that Plaintiff had good and bad days regarding her pain, would miss more than four days of work each month, and would need to take unscheduled breaks to change position at will and lie down whenever needed. (Tr. 1032–33.) In a supplemental letter dated June 21, 2018, Guth explained that Plaintiff was "continuing to improve" and that she was "unable to perform any type of gainful employment" at the time. (Tr. 1034.)[10]

---

[9]   The vocational expert testified Plaintiff would be able to perform the following jobs: document preparer, lens inserter, and final assembler. (Tr. 1823.)

[10]  The ALJ addressed Guth's 2018 opinion and letter in her decision issued on December 12, 2018. The ALJ gave these opinions little weight because the claim of missing work multiple days a month was "based largely upon the claimant's own subjective self-report of symptoms." (Tr. 25.) Further, the ALJ stated the opinions were not "well explained or supported by reference to objective findings." (*Id.*) And the ALJ

8

Approximately two years later, in a letter and medical source statement dated May 1, 2020, Guth opined that Plaintiff's chronic pain would require her to alternate positions from sitting to standing throughout the day, limit her ability to lift more than ten pounds, limit her ability to walk around, and require breaks to lie down throughout a shift. (Tr. 2942–43.) At that time, Guth also opined that Plaintiff would be absent more than three days a month and would remain off work indefinitely.[11] (Tr. 2941, 2945.) In her 2021 decision, the ALJ assigned little weight to Guth's three opinions because they "are not well explained or supported by reference to objective findings." (Tr. 1820–21.)

Because Plaintiff's claim was filed before March 27, 2017, the Court applies the standard from the old regulation for evaluating treating providers. *See* 20 C.F.R. § 404.1527. In evaluating a claimant's work-related limitations, an ALJ is to consider both "medical opinions" from acceptable medical sources and opinions from non-medical sources. Both parties agree that when applying the old regulation, Guth (and Sundar-

---

afforded Guth's letter little weight because he opined on an issue reserved for the Commissioner. (*Id.*) In her first appeal, Plaintiff challenged the weight given Guth's opinions by the ALJ in her 2018 decision. In its 2020 Order, this Court found that "the ALJ provided adequate reasons supported by substantial evidence for her decision to give little weight to Guth's opinions" and affirmed the ALJ's decision with respect to Guth. (Tr. 1923.) For purposes of this second appeal, this Court considers the weight given to each of the Guth opinions in light of the complete record now before the Court.

[11]   The RFC addresses the ability to alternate positions and to walk around by including a limitation that Plaintiff could stand/walk for 2 hours and sit for up to 6 hours in an 8-hour day. The RFC also limits Plaintiff's ability to lift more than ten pounds by including a limitation of "lifting up to 10 pounds occasionally and less than 10 pounds frequently." (Tr. 1802.) The ALJ did not include limitations in the RFC that would address Guth's opinion that Plaintiff required breaks and needed to lie down throughout her shifts, or that Plaintiff would need to be absent more than three days a month.

9

Bleninger) are not "acceptable medical sources," but are "other sources" with a history of treating the Plaintiff.

20 C.F.R. § 404.1527(f) requires an ALJ to consider an opinion using the factors in sections (c)(1) to (c)(6) and then "explain the weight given to opinions [so that a reader can] follow the adjudicator's reasoning." *See Hicks v. Colvin*, No. 15-0283-CV-W-REL-SSA, 2016 WL 5387650, at *13 (W.D. Mo. Sept. 26, 2016) (explaining the ALJ should explain the weight given to a non-medical source opinion). The regulations state that the ALJ considers non-acceptable medical source opinions using the section 404.1527(c) factors (i.e., examining relationship, treatment relationship, support for the opinion, consistency with record as a whole, whether the opinion comes from a specialist, and other factors). 20 C.F.R. § 404.1527(f)(1). However, not every factor will be applicable in every case "because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." *Id.* Instead, the regulations state that the ALJ "generally should explain the weight given to opinions [from non-acceptable medical sources]." *Id.*

Here, as in her prior decision, the ALJ explained that Guth's opinions (including the new opinions from 2020) were accorded little weight because they were unsupported by objective medical evidence, overly reliant on Plaintiff's subjective complaints, and pertained to an issue reserved to the Commissioner. (Tr. 1820–22.) Specifically, the ALJ explained her decision to give little weight to the 2018 opinions because they lacked objective support such as clinical findings. (Tr. 1820–21.) Similarly, the ALJ also assigned no weight to the letter prepared by Guth on May 1, 2020, because "the

10

limitations are based upon the claimant's subjective reports of pain," and Guth "offers no explanation that involves citation to objective medical findings." (Tr. 1822).

The ALJ was entitled to give Guth's conclusory opinions less weight. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991) (holding that an ALJ was not required to give greater weight to a physician's opinion that contained "few explanations and [was] composed almost entirely of conclusions"). In particular, Guth's opinion that Plaintiff required breaks, needed to lie down during shifts, and would be absent more than three days a month were all conclusory. In addition, it was not erroneous for the ALJ to give Guth's opinions less weight where they were not supported by medical evidence and appeared to be based on Plaintiff's subjective complaints. *See Baker v. Colvin*, 620 F. App'x 550, 556 (8th Cir. 2015) (stating that opinions are entitled to less weight when "inconsistent or contrary to the medical evidence as a whole") (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011); *see also Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (affording an opinion less weight when the opinion was based on the plaintiff's subjective complaints rather than on objective medical evidence).

Furthermore, there was substantial evidence in the record for the ALJ to find that Guth's opinions were not supported by the objective medical record. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (stating the ALJ may give less weight to opinions that lack support from medical evidence). For example, in August 2018, Plaintiff went for a post-surgery appointment with Guth and he noted she had "normal active range of motion of the hips, knees, ankles, shoulders, elbows, and wrists."

11

(Tr. 1367–68, 1807.) While Plaintiff sought treatment for back pain and other ailments throughout the relevant time period, she also reported improvements and reduced pain after treatment. (Tr. 2466, 2470.) In addition, Plaintiff was seen in October 2018, a year postoperatively, and it was noted that she was doing well "with respect to her lumbar fusion" and "walked with a well-balanced gait." (Tr. 1807–08, 2418, 2422–25.) Although the recommended steroid injection in November 2018 to treat her low back and neck pain "did not relieve her symptoms completely," she continued receiving various pain-relief treatments, such as Botox injections, steroid injections, and trigger point injections, through the end of 2018 and throughout 2019, and reported that "she [wa]s able to function much more effectively with these treatments." (Tr. 1807–08, 2418, 2825, 2915.) After having a spinal cord stimulator implanted in November 2019, Plaintiff had the stimulator reprogrammed once or twice, but by May and June 2020 she reported "having good days and bad days" and "a significant decrease in pain since the procedure." (Tr. 1810–11, 2846, 2959–60, 2988–93, 3006–07, 3012–13.) In June and September 2020, Plaintiff received Botox injections as part of her pain management and the results were reportedly "good . . . as usual." (Tr. 1812, 3056, 3177, 3186–87, 3192.) And, when seen for an intrathecal pump implant consultation on September 14, 2020, Plaintiff "reported receiving Botox injections in the neck and getting 60-70% relief" and she also received "moderate relief from the placement of a spinal cord stimulator." (Tr. 1812, 3251.) Although the record supports that Plaintiff continued to experience some level of pain throughout the relevant time period, this record evidence does not provide support for Guth's opinion that Plaintiff would require breaks, would need to lie down during

12

shifts, would miss more than 3 days of work a month due to her pain, and would not be able to perform gainful employment at this time; instead, this evidence supports the ALJ's ultimate RFC determination.

Finally, the ALJ also properly accorded little weight to Guth's June 21, 2018 supplemental letter and Guth's 2020 opinion regarding Plaintiff's inability to work because they contained opinions reserved to the Commissioner. In his 2018 letter, Guth said Plaintiff was "unable to perform any type of gainful employment at this time." (Tr. 1034.) In his 2020 opinion, Guth said Plaintiff would "remain off work indefinitely due to her chronic pain." (Tr. 2941.) Whether a claimant is unable to work is an issue reserved to the Commissioner and is thus entitled to no deference. 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner."); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight.").

This Court should affirm the ALJ's decision when it is supported by substantial evidence, even when other contradicting evidence could support an opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Here, the ALJ provided an explanation as to why she gave Guth's opinions little to no weight and supported her explanation with substantial evidence in the record. Therefore, the ALJ's decision as to Guth's opinions should be affirmed.

### B. The ALJ's Consideration of Nurse Practitioner Sundar-Bleninger's Opinion

Plaintiff also argues the ALJ erred in assigning little to no weight to the letter prepared by Ms. Sundar-Bleninger. (Pl.'s Mem. 21–23.) Sundar-Bleninger is an advanced practice registered nurse who treated Plaintiff from 2018 to 2020. (Tr. 2936.) In a letter dated April 30, 2020, Sundar-Bleninger opined Plaintiff "will not be able to maintain full-time, competitive employment." (Tr. 2937.) However, she also noted various successes in managing and reducing Plaintiff's chronic pain through Botox injections, various surgeries, a steroid injection, and high-dose opioids. (Tr. 2936–37.) In her medical source statement, Sundar-Bleninger noted Plaintiff uses a back brace and walker/cane when needed and opined that Plaintiff would be absent from work more than three days a month and reiterated her opinion that Plaintiff cannot maintain employment. (Tr. 2938–39.) In her decision, the ALJ assigned little to no weight to Sundar-Bleninger's opinions because "they are not well explained and because they are not generally consistent with the evidence overall." (Tr. 1821.)

As noted above, Sundar-Bleninger is a non-medical source, like Guth, and 20 C.F.R. § 404.1527(f) requires an ALJ to consider her opinion using the factors in sections (c)(1) to (c)(6) and then "explain the weight given to opinions [so that a reader can] follow the adjudicator's reasoning." *See Hicks*, 2016 WL 5387650, at *13. Here, the ALJ provided several reasons for the weight given.

First, the ALJ correctly explained that Sundar-Bleninger's notes conflicted with her opinion. *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (giving a treating

doctor's opinions less weight because his own notes were inconsistent with medical evidence and his opinion finding the plaintiff disabled). For example, Sundar-Bleninger's own notes regarding Plaintiff's Botox injections show that Plaintiff had "good results as usual" each time Plaintiff received a quarterly injection. (Tr. 3056, 3177, 3186–87, 3192.) And again, as noted above, during the pre-surgery consultation for an intrathecal pump implantation, Plaintiff "reported receiving Botox injections in the neck and getting 60-70% relief" and "moderate relief from the placement of a spinal cord stimulator." (Tr. 1812, 3251.) These notes do not align with Sundar-Bleninger's opinion that Plaintiff would not be able to maintain employment.

      Further, other objective medical evidence in the record contradicts Sundar-Bleninger's opinions as well. Plaintiff "walked with a well-balanced gait" and was doing well postoperatively, as mentioned above. (Tr. 1807–08, 2418, 2422–25.) The steroid injections and Botox treatments did result in Plaintiff functioning "much more effectively." (Tr. 1807–08, 2915.) Also as mentioned above, after the spinal cord stimulator was implanted and programmed, Plaintiff experienced "a significant decrease in pain" and it allowed Plaintiff to "hav[e] good days and bad days." (Tr. 1810–11, 3007, 3012–13.) Therefore, the things Sundar-Bleninger points to—Plaintiff's use of a back brace and walker/cane, need for frequent breaks, and being off task—is not consistent with the objective medical record overall. An ALJ may grant less weight to a physician's opinion when that opinion conflicts with other substantial medical evidence within the record. *See McCollum v. Colvin*, No. 1:15-CV-21 NAB, 2016 WL 1046892, at *3 (E.D. Mo. Mar. 16, 2016) (citing *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009)).

Finally, not only did Sundar-Bleninger not explain or point to evidence supporting her opinion that Plaintiff would be absent and could not maintain full time employment, the ALJ also appropriately gave no weight to these statements because this issue is reserved for the Commissioner. (Tr. 1821); *see* 20 C.F.R. § 404.1527(d) (stating that opinions regarding a plaintiff's disability, ability to work, RFC determination, and listing impairments are all opinions are "reserved to the Commissioner because they are administrative findings that are dispositive of a case"); s*ee also Ellis*, 392 F.3d at 994.

This Court should affirm the ALJ's decision when it is supported by substantial evidence, even when other contradicting evidence could support an opposite conclusion. *Perkins*, 648 F.3d at 897. Here, the ALJ provided an explanation as to why she decided to give Sundar-Bleninger's opinions little to no weight using the factors listed in 20 C.F.R. § 404.1527(c), and supported her explanation with substantial evidence in the record. Therefore, the ALJ's decision as to Sundar-Bleninger's opinion should be affirmed.

In sum, while the Court is sympathetic to Plaintiff's undisputed severe impairments, it finds substantial evidence supports the weight the ALJ assigned the opinions of record. While Plaintiff may disagree with the weight the ALJ afforded the evidence, she has not established reversible error, and the Court should decline to reweigh the evidence. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018); *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (stating an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion). Accordingly, this Court recommends that the Commissioner's final decision denying Plaintiff's application for disability insurance benefits should be affirmed.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 19) be **GRANTED**.

Date: November 17, 2022                                  *s/ Becky R. Thorson*
                                                         BECKY R. THORSON
                                                         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).